Before hearing from counsel, for those of you that are interested in Daniels Hall versus NEA, the panel does plan to take a short recess after the current case, but before Daniels Hall. Thank you. Counsel, you may proceed. Thank you, Your Honor. My name is Charles Talbot. I represent Miranda Eksund, who is the plaintiff and the appellate in this case. This is a Social Security disability case, and we're before the court on the denied application for Ms. Eksund's claim of disability. The application was filed in January of 2005, at which time Ms. Eksund alleged that she was disabled as of the 31st day of December, 2003. This lady has a variety of conditions which she claims are disabling. They are primarily mental in nature, not physical. She has a borderline intellectual functioning and consistently has been tested with an IQ of 75. She's been diagnosed with a learning disorder and also a behavioral disorder, not only in terms of the diagnosis, but empirically it's been shown that she has difficulty maintaining employment as a result of her behavioral problems. She's also been diagnosed with anxiety and dyslexia. The court, I'm sure, is familiar with the sequential evaluation process, and I think where this case sort of gets sideways is at step four of the sequential evaluation process, because the decision of the ALJ in this case is not consistent. The ALJ in this case, and this is on page 22 of the record, page nine of the judge's decision, in finding number six says the claimant is capable of performing past relevant work, and then that goes on to describe what that past relevant work consisted of. However, on that same page, there's multiple references to the fact that the claimant has no past relevant work. In mid-page, the comment is made, while her earnings record does not reflect past relevant work. Below finding number six, it says the claimant's earnings record does not reflect that she's ever performed substantial gainful activity. There was some reference to making $150 a month. That would be below a threshold, would it not? It would, and the judge so found, and the empirical evidence in this case supports that, there is no level of work above what's called SGA. Now, the regulations require three elements for work to be past relevant work. One is it has to be done within 15 years. Secondly, it has to be done at SGA levels, and third, it has to be done long enough to be learned. Now, at step four, we have this inconsistency where, and objectively it's clear in the record, that there is no work in the past that's done at SGA levels. So, by rule, you've got an error of law in this case in the sense that the judge's articulated finding, which, like I said, is inconsistent with the verbiage in the decision explaining this, that you have this inconsistency, and clearly, objectively, past relevant work doesn't exist. Now, if you don't have past relevant work at step four of the sequential evaluation process, you're mandated to go to step five, and that is whether other work exists this individual is capable of performing. Here's where we run into another problem. The judge said that this lady's past work as a floral arranger was work that she was capable of performing. A couple of problems with that. First of all, this lady went through an education and training program in high school to become a floral arranger. She made an attempt to work at this. It lasted exactly one week, and she was fired because she couldn't perform the work. That experience would be inconsistent with the judge's finding. There's medical evidence in the record of a psychologist who treated this lady during high school and shortly thereafter, and he was aware of this training program this lady undertook for this floral work, and when he became aware of the fact that it was terminated, and knowing her background for a number of years, having counseled her and the family, his comment was that this was not suitable for her. This was not work that was something that she should have been undertaking. So ultimately, just to speed things up a little, I understand your step four argument. With regard to your step five argument, one point is that the reliance on the floral arranger as possible work is not valid. What about the vocational expert issue? I'm sorry? The vocational expert issue. We don't have one. I know. So the question is, was that a problem? Certainly it was. And as we set forth in the brief, this lady has a significant number of non-exertional impairments, which collectively would dramatically impact an individual's capacity for work. And I refer you to the state agency's assessments. You'll find those at 559 and 377. These were mental RFC determinations. The one at 377 was on May 16, 2005. The other one at 559 was on August 29, 2005. And they're pretty consistent. They list a significant number of moderate limitations based upon this woman's mental disabilities. And one of the more significant ones that you'll see, and this is on the second page of the MRFC document, is the fact this lady cannot tolerate the pressures of the workplace and would have attendance problems. And as indicated from her attempts at work, she has significant problems. Many of the jobs that she did attempt were ones where she was fired. Like I mentioned before, she worked the floral arranger job for a week and was fired. She worked at Safeway for five months and was fired. She also worked at Value Village for a week in 2000. That's at 702 in the record, and was fired. Counsel, let me make a suggestion. You've teed up the issues quite well. Why don't we hear from the other side, and you can reserve the remainder of your time if you wish, or you may keep proceeding. No, that's fine. All right, great. Thank you. Let's hear from the Commissioner. May it please the Court, my name is Mike Howard, representing the Commissioner in the case of Exon v. Astru. Your Honors, with me at Council table is David Burdette. Your Honors, this case may be resolved at Step 5 of the sequential evaluation process by reference to the medical vocational guidelines and Social Security ruling 8515. The essential contention we would like to offer is that Ms. Exon's mental limitations are consistent with the requirements of unskilled work, as those occupations are defined by the administration. And because she can perform unskilled work, she is properly found not disabled. What do we do with the argument that Mr. Talbot makes that to the extent that the ALJ relied on It just seems to me that there's some inconsistencies here. And while if this were remanded, it might come out, the result might be the same. There seems to be a gap in terms of the ALJ's conclusions here. Well, Your Honor, on further evaluation, the Commissioner would concede the floral ranger finding at Step 5. You say the Commissioner concedes that? The floral ranger finding. All right. Considering that specific job, we would defend this case on the basis of the Step 4 finding and the Step 5 finding. The Step 4 finding was also completely contradictory, right? I mean, the Step 4 finding was that she did this conventional work, but she didn't do it at a level that would be substantial whatever work. Well, Your Honor, I would admit that there are some contradictions in the language of the decision, but I think it's reasonably clear, and the Court can infer what the basis for the decision was. The ALJ's decision, in fact, says that her earnings did not meet the requirements. Her earnings record did not show substantial gainful activity. And as the agency's regulations show and rulings show, earnings are presumptive but not determinative. As far as the record shows, the most she ever made was $150 a month. And in most cases, I would agree, Your Honor, that that is not substantial gainful activity. It was in this case for one essential reason, and that is because at page 230 of the record, Ms. Exon admits that her job as a napkin folder or catering assistant, she admits that she would have desired more hours, that she was able and willing to work more hours, but essentially her employer was not providing those to her. And that was not because of her mental limitations that she could not work more hours. It was just because of employers' scheduling that she was not given more hours. But that's not my understanding. I mean, that might be irrelevant in Step 5, but why is it relevant in Step 4? I thought at Step 4 the question is, did she, in fact, have substantial gainful activity? She didn't. Well, Your Honor, I would submit that in certain cases it is permissible when earnings are below the presumptive dollar amounts, it is permissible to consider other factors. Because she admitted that she's able and willing to work more hours, under this Court's past case of Byington v. Chater, this Court was dealing with whether an individual's work as a substitute school bus driver met the standards for substantial gainful activity. And the Court accounted for the fact that the work was on a substitute or a part-time basis, and the individual was actually able to work more. And the Court's language in that case found that they considered the person to have engaged in substantial gainful activity. No matter how part-time? I mean, I can understand that if it was 40 percent time or 50 percent time, but this was like 10 percent time. Well, Your Honor, I would agree that it was not, you know, 20 hours a week. But given her admission at page 230 of the record that she was able and willing to work more, and also other evidence in the record. But we know that she is a somewhat impaired person. Her perception of whether she is able, people apparently are not willing to employ her more. So whether she is willing to work more really isn't so much the question. And her perception of why they weren't willing to employ her more isn't necessarily accurate. I mean, we know that she went to work for a floral arranger and they fired her after a week. We know that every job she's had, she's been fired after a very short time. She just doesn't seem to be able to fulfill workplace expectations. The fact that one employer is willing to let her work for 10 hours a week or something to do a little work doesn't tell you very much. Well, Your Honor, I submit in this case it does. The catering assistant job, that's how I refer to it, or napkin folder, she was not fired from that position. She worked in it for a year. And when she was laid off, it was due to employer downsizing and not due to any performance issues. And she's also held other jobs and engaged in other daily activities that show that she is able to perform, provide evidence for the assertion that she is able to perform simple work with no public contact. I'm only discussing the Part 4 issue now, right, which is whether this is the – I mean, then you get to Part 5 and that's a different question. But on the Step 4 question, the issue is has she had substantial gainful work? I would qualify that, Your Honor. The – under the agency's own regulations, and if you look at the definition of what the term substantial gainful activity means, I'm looking at the regulations 20 CFR 404.1571. The regulations there show that – acknowledge that a person's work may show that they are able to work more than they actually did. And so in certain limited situations, it is appropriate to consider the individual's ability to work more hours. And in this case, that is a reasonable inference to make, and it's reasonable to give weight to the plaintiff's admission at page 230 of the record. But then when you get to Step 5, your ultimate contention is that she's within the – what you call the grids? Yes, Your Honor. So you're not arguing that if she were within the grids that a vocational expert wouldn't have been required? If I understand Your Honor's question correctly, we are essentially saying because she has no physical limitations, she's not falling under a specific grid rule, for instance, for light or sedentary work. The grids or guidelines are taking administrative notice of hundreds of occupations that are defined as unskilled work. And Social Security ruling 8515, which was cited by the LJ, just clarifies those policies. And essentially what we are saying is that as a matter of administrative notice, her RFC, her residual functional capacity, is entirely consistent with the definition of unskilled work. And therefore, because she has no physical limitations, she's able to perform unskilled work at all exertional ranges. Okay, but isn't the question about how her non-exertional disabilities would have affected that? That's the issue. It is the issue. Was it necessary to have a vocational expert to figure that out? No, Your Honor, it was not. I provided a copy of ruling 8515 for Your Honor's convenience before this hearing. The ruling provides that the final consideration is whether the person can perform unskilled work, as Your Honor correctly points out. And it also states that a VE, vocational expert, excuse me, is helpful in more complex cases. But in cases where, and the ruling defines unskilled work, and in cases where the individual's mental limitations, they have solely mental limitations, and those are consistent with the definition of unskilled work, which is simple tasks, dealing appropriately with supervisors and coworkers, a routine work environment, and dealing primarily with objects rather than data or people, where the mental limitations do not involve a substantial loss of any of those basic work-related activities, it is proper to find the individual not disabled without a vocational expert, essentially as a matter of administrative notice. What about the Ninth Circuit law? The Ninth Circuit law has acknowledged that the guidelines can be used when they accurately and completely describe, the term accurate and complete comes from the case of Jones v. Heckler. Guidelines mean the grids? Yes. I'm sorry, Your Honor. The agency calls them the guidelines. But they don't. No, they don't. Right. I mean, you need to find, she is asserting non-exertional limitations. So the grids don't account for that, right? I would agree with Your Honor that the grids, the guidelines, do not account for a wide number of non-exertional limitations, which can involve many things, such as, in the case of Jones v. Heckler, they're dealing with manipulative limitations, fingering and handling, that weren't accounted for in the guidelines or the grids. But in this case, what we're essentially saying is that the guidelines are dealing only with a certain set of jobs that are defined as unskilled work. And unskilled work, by definition, is limited to certain basic tasks and certain environments, and it requires certain social interactions. So although a person may have mental limitations, Social Security ruling 8515 provides that those mental limitations do not preclude the application of the guidelines where they are consistent with unskilled work, and only in more complex cases where they are not answered easily by the guidelines or the definition of unskilled work is it necessary to call a vocational expert and identify specific jobs that a person could perform. That's helpful. Thank you, Counsel. We will now hear from Mr. Talbot if you have some reserve time. A brief comment at the step four. It's not a question of what you wanted to do, it's a question of what you did. Let's do step five. I think the argument that's been made is interesting, and I'd like to know why you disagree with it. Well, at step five, the regulations clearly state and does the case law that when you have non-exertional impairments, which are really what is at the core of this case, is you can't rely on the grids for determination. The argument, as I understand it, is that's generally so, but where the grids lead to totally unskilled work and where the asserted impairments are not inconsistent with totally unskilled work, even as asserted, then there's no reason to go anywhere else. Well, the courts have been pretty clear consistently saying that when you have non-exertional impairments you have to have a vocational expert in attendance to testify as to the impact of those non-exertional impairments on a person's ability either to work or to sustain employment. And as I mentioned earlier... The counsel for the commissioners brings our attention to SSR 8515, which I gather he suggests obviates the need for a VE. What's your response to that? I think that if you read the SSR closely, it doesn't take into account non-exertional impairments. It basically says, and I think it's consistent with the grids, that says that when you're dealing essentially with physical impairments alone, then it simply articulates a policy that's reflected in the grids, or the grids reflect a policy that's in the SSR. I'm not sure which came first. I think the grids came first. I believe it were in 1980 or 81 is when they came into being. But it doesn't take into account the non-exertional impairments. And I'd point out in 377, for the record, just a couple of elements. Modern impairments exist in the ability to maintain attention and concentration for extended periods, ability to get along with co-workers, a peer, without distracting them or exhibiting behavioral extremes, which has been evidenced in this case. And I think most importantly in the last is the ability to complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform in a consistent pace without an unreasonable number and length of rest periods. Now, these are reports from the state agency commissioned by the Social Security Administration to put together all of the facts of the case and do an assessment. And those, I think, very clearly demonstrate why a vocational expert should have been consulted in this case to determine whether this lady could work at Step 5. There was a comment made by one of the evaluators, again, an evaluator by the SSA. You'll find this on page 543 to 544 of the record, that after an examination, this examiner said this lady could only be capable of doing special jobs, which is basically not consistent with a Step 5 ability to do a wide range of work. So we ask this case be reversed. Thank you, counsel. The case just argued will be submitted for decision, and the court will take a brief recess.
judges: Hall, O'scannlain, Berzon